UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT DUFFER,<br><br>    Plaintiff,<br><br>v.<br><br>NEXTDOOR, INC.,<br><br>    Defendant. | Civil Action No. 1:22-cv-12214-NMG |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Nextdoor, Inc. ("Nextdoor") submits this memorandum in support of its *Motion to Dismiss Plaintiff's Complaint* [Doc. No. 5] as follows:

**I.    INTRODUCTION**

Plaintiff Robert Duffer ("Plaintiff") seeks to hold Nextdoor liable for negative comments made about his business by another user of Nextdoor's platform. As countless courts have already recognized, Section 230 of the Communications Decency Act ("Section 230") does not permit this result and bars Plaintiff's claims in their entirety.

Nextdoor operates an internet platform whereby local community members can share digital space to connect with one another and share information affecting their community.[1] Similar to Facebook, YouTube, and Twitter, Nextdoor allows members to post pictures, videos, and other content that other Nextdoor users can view, share, or discuss. Plaintiff was a user on Nextdoor's platform and utilized Nextdoor to promote his business and obtain contracting work. *See Complaint*, Doc. No. 1 at ¶ 17. In using Nextdoor's platform, Plaintiff agreed to be bound by

---

[1] What is Nextdoor?, https://help.nextdoor.com/s/article/what-is-nextdoor?language=en_US (last visited Mar. 31, 2023).

1

the terms of Nextdoor's Member Agreement.  *See* Doc. No. 1 at ¶ 10; *see also Nextdoor Member Agreement*, Ex. A, Doc. No. 5-1.

Plaintiff alleges that Nextdoor was negligent in failing to timely remove negative comments made by another Nextdoor user that disparaged his business.  Doc. No. 1 at ¶¶ 6, 7, 15.  Plaintiff further alleges that this failure constitutes an unfair and deceptive business practice, as Plaintiff believed Nextdoor should have acted faster in removing the offending posts based on Nextdoor's Member Agreement.  Doc. No. 1 at ¶16.  Specifically, Plaintiff alleges two causes of action against Nextdoor: (1) unfair and deceptive business practices under M.G.L. Chapter 93A; and (2) negligence.  Doc. No. 1 at 3.  Plaintiff is seeking $118,000.00, purportedly "representing earnings he would have enjoyed but for the disparaging Nextdoor postings."  Doc. No. 1 at 4.[2]

Plaintiff's Complaint should be dismissed without leave to amend because: (1) Plaintiff's claims are barred pursuant to Section 230; (2) Plaintiff's claims are barred pursuant to the Member Agreement; and (3) Plaintiff has failed to state a claim under Massachusetts law.

## II.   STANDARD FOR MOTION TO DISMISS

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is plausible on its face only if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Under this standard, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and

---

[2] To the extent Plaintiff's claims require interpretation of Nextdoor's Member Agreement, California law governs the interpretation of those terms.  *See* Doc. No. 5-1 at ¶ 20.  Regardless, the result remains the same: Section 230 preempts all of Plaintiff's claims.  *See* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."); *see also Zeran v. America Online, Inc*., 129 F.3d 327, 334 (4th Cir. 1997).

a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court endorses a two-pronged approach for applying the plausibility requirement. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 10 (1st Cir. 2011). First, a court should identify and disregard statements in the complaint that merely offer legal conclusions couched as fact because they are not entitled to a presumption of truth. *Id.* Second, a court should "accept the remaining factual allegations in the complaint as true, and … evaluate whether, taken as a whole, they state a facially plausible legal claim." *Id.* at 10-11. "Where a complaint pleads facts that are merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. 678 (internal quotation marks omitted).

### III.   ARGUMENT

**A.   Section 230 Requires Dismissal of All of Plaintiff's Claims.**

Section 230 provides broad immunity designed to protect the freedom and openness of online communications. *See Batzel v. Smith,* 333 F.3d 1018, 1026-29 (9th Cir. 2003); *Jones v. Dirty World Entm't Recordings*, 755 F.3d 398, 407-08 (6th Cir. 2014). Its breadth is apparent on the face of the statute: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1); *see also Universal Comm. Sys. v. Lycos, Inc*., 478 F.3d 413, 418 (1st Cir. 2007) ("Although this court has not previously interpreted CDA Section 230, we do not write on a blank slate. The other courts that have addressed these issues have generally interpreted Section 230 immunity broadly, so as to effectuate Congress's 'policy choice … not to deter harmful online speech through the … route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.'") (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d

327, 330-31 (4th Cir. 1997) and citing *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-24 (9th Cir. 2003); *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 985 n.3 (10th Cir. 2000)). "In general, this section protects websites from liability for material posted on the website by someone else." *Doe v. Internet Brands*, 824 F.3d 846, 850 (9th Cir. 2016).

It is also well recognized that Section 230 immunity attaches "at the earliest possible stage of the case." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see also, Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (Section 230 "protect[s] websites not merely from ultimate liability, but [also] from having to fight costly and protracted legal battles"). The statute thus requires dismissal of any claim where, as here, a service provider's immunity "is evident from the face of the complaint." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1356-1357 (D.C. Cir. 2014).

### i. Nextdoor is Subject to Section 230 Immunity.

There is an established three-part test for Section 230 immunity. "[C]ourts have recognized that § 230 bars a claim if (1) the defendant asserting immunity is an interactive computer service provider, (2) the particular information at issue was provided by another information content provider, and (3) the claim seeks to treat the defendant as a publisher or speaker of that information." *Jones,* 755 F.3d at 409. Each of these elements is met in this case.

### a. Nextdoor is a Provider of "Interactive Computer Services."

The first element for immunity is that the defendant is an "interactive computer service," *id.*, which Section 230 defines as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). No colorable argument exists that would suggest Nextdoor fails to meet this definition, nor is this element in dispute, because Plaintiff alleges that "Nextdoor, Inc. … maintains

4

websites called *neighborhoods,* where members chat and also offer contractor and other services." Doc. No. 1 at ¶ 1. In short, Nextdoor easily satisfies this definition because its users access its servers to share information with others.

### b. The Content at Issue Was Provided by Third Parties.

The second element for immunity is that the relevant content at issue is provided by someone other than the service provider. *Carafano*, 339 F.3d at 1124-25. Here, the second element is clearly met because Plaintiff's entire Complaint is premised upon the disparaging comments *another* Nextdoor user made about his business. Doc. No. 1 at ¶¶ 6-7. The Complaint does not allege that Nextdoor played any part in the "creation or development" of the content that forms the basis of Plaintiff's claims. Rather, the Complaint explicitly alleges it was the "apparently-disgruntled neighbor[,]" not Nextdoor, who posted the "negative comments concerning Mr. Duffer" that allegedly caused "serious damage … to Mr. Duffer's reputation with dire financial consequences." *Id.* at ¶¶ 6, 7, 15. Because all of the content at issue was "provided by another information content provider"—*e.g.*, the "apparently-disgruntled" Nextdoor user— rather than by Nextdoor, it falls squarely within the statutory immunity of Section 230. 47 U.S.C. § 230(c)(1); *see also Carafano*, 339 F.3d at 1123-25.

Furthermore, courts have consistently ruled that Section 230 shields platform providers like Nextdoor from liability over the decision to allow, remove, or edit posts generated by third parties. *See Barnes v. Yahoo!, Inc.*, 565 F.3d 560, 562 (9th Cir. 2009) ("Subsection (c)(1), by itself, shields from liability all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties."); *see also Zeran*, 129 F.3d at 334 ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as **deciding whether to** publish, **withdraw**, postpone or alter content—

are barred.") (emphasis added).  Here, though not required to, Nextdoor ultimately removed the posts of the unnamed Nextdoor user.  Doc. No. 1 at ¶ 16.  But even if Nextdoor had decided not to remove the posts, it would still be entirely shielded from liability based on settled law with respect to Section 230.  *See Barnes*, 565 F.3d at 562; *Zeran*, 129 F.3d at 334.

### c. Plaintiff's Claims Seek to Treat Nextdoor as a Publisher.

The third element for immunity is also satisfied because Plaintiff seeks to hold Nextdoor liable as the "publisher or speaker" of the third-party material.  As discussed above, the Complaint alleges that Nextdoor failed to timely remove disparaging comments about Plaintiff's business by another Nextdoor user.  Doc. No. 1 at ¶¶ 6, 7.  Plaintiff's theory, in other words, is that Nextdoor permitted a third party to publish harmful material on its service and failed to do enough to remove the content.  This theory targets Nextdoor's "traditional editorial functions" which relate to decisions regarding "whether to publish, withdraw, postpone, or alter content."  *Zeran*, 129 F.3d at 334.  Accordingly, this is "precisely the kind of activity for which Congress intended to grant absolution with the passage of section 230."  *Roommates.com*, 521 F.3d at 1171-1172; *accord Klayman*, 753 F.3d at 1359 ("[T]he very essence of publishing is making the decision whether to print or retract a given piece of content.").

Importantly, Section 230 was specifically "enacted to protect websites against the evil of liability for failure to remove offensive content."  *Internet Brands*, 824 F.3d at 852.  In decision after decision, "courts have rejected claims that attempt to hold website operators liable for failing to provide sufficient protections to users from harmful content created by others."  *See, e.g.*, *Jane Doe No. 1 v. Backpage.com,* 817 F.3d 12, 21 (1st Cir. 2016) (dismissing claims based on Backpage's choices about what content can appear on its website and in what form); *Barnes*, 570 F.3d at 1103 (dismissing claim based on Yahoo's allegedly negligent failure to remove indecent

profiles posted by plaintiff's former boyfriend); *Klayman*, 753 F.3d at 1355, 1358-59 (rejecting attempt to impose liability on Facebook for declining to take down allegedly pro-terrorist content); *Doe v. MySpace, Inc.*, 528 F.3d 413, 419-20 (5th Cir. 2008) (dismissing claim predicated "on MySpace's failure to implement basic safety measures to protect minors").

This case falls into the same pattern. Plaintiff's effort to premise liability on Nextdoor's alleged failure to timely remove content from its service is exactly what Section 230 forbids. *See Zeran*, 129 F.3d at 331 ("Congress' purpose in providing the § 230 immunity [is] evident. Interactive computer services have millions of users. The amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems.") (internal citation omitted). Relatedly, and in accordance with its policy goal, Section 230 explicitly preempts any actions brought under state law. 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."); *see also Zeran*, 129 F.3d at 334 ("[I]t is equally plain that Congress' desire to promote unfettered speech on the Internet must supersede conflicting common law causes of action."). As a result, Nextdoor cannot be found liable for any cause of action that Plaintiff attempts to assert and therefore, the Complaint should be dismissed without leave to amend.

**B. The Member Agreement Also Bars All of Plaintiff's Claims.**

In addition to Section 230's application, Plaintiff's claims are barred by the Member Agreement. The Member Agreement, which Plaintiff references in (but does not attach to) his Complaint, *see* Doc. No. 1 at ¶ 10, provides, in relevant part, that Nextdoor "and our suppliers shall not be liable for any lost profits or special, incidental, punitive or consequential damages

(however arising, including negligence) arising out of or in connection with Nextdoor, including the Nextdoor services, our software, your use of Nextdoor or any Nextdoor service, or this Agreement." Doc. No. 5-1 at ¶ 19. The terms of this release section were written in plain unambiguous language such that an ordinary person would understand what they were contracting away and releasing any claims for damages that Plaintiff may have. *See Benedek v. PLC Santa Monica,* 104 Cal. App. 4th 1351, 1356 (2nd Dist. 2002) ("To be effective, such a release 'must be clear, unambiguous, and explicit in expressing the intent of the subscribing parties.' The release need not achieve perfection.") (internal citation omitted). Here, Plaintiff unambiguously agreed to the terms of the Member Agreement by creating an account and utilizing Nextdoor's services. *See* Doc. No. 1 at ¶¶ 2-3, 10. Therefore, under California law,[3] this constitutes an enforceable waiver. *See Paralift, Inc. v. Superior Court,* 23 Cal. App. 4th 748, 755 (4th Dist. 1993).

Additionally, the Member Agreement provides that Nextdoor does "***not proactively moderate*** Content posted by members; however, [Nextdoor] ***can*** remove Content posted by you, suspend, delete or deactivate your account or limit privileges, or otherwise refuse service to you, if you violate this Agreement or our other policies … or otherwise engage in behavior that we think harms a Nextdoor neighborhood." Doc. No. 5-1 at ¶ 7. Therefore, taking Plaintiff's allegations as true, Nextdoor's decision whether or not to remove another user's posts are fully within its rights pursuant to the Member Agreement, and Plaintiff's claims relating to Nextdoor's conduct in this regard must be dismissed.

## C.  Plaintiff Fails to State a State Law Claim.

Plaintiff appears to attempt to state two state law claims, both of which are preempted by federal statute (47 U.S.C. § 230) and barred by the Member Agreement. However, these claims

---

[3] *See supra* at n.2.

also fail for the reasons stated below.

### i. Plaintiff Fails to State a Claim for Violations of M.G.L. Chapter 93A.

Plaintiff alleges it is both unfair and deceptive that Nextdoor "in a contract of adhesion--led the Plaintiff to believe that disparaging postings damaging his reputation on the *Nextdoor* website would, if reported, be removed from publication …." Doc. No. 1 at 3. But "in Massachusetts, the 'general rule is that contracts of adhesion are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances.'" *Shepardson v. Am. Family Life Assur. Co. of Columbus*, 525 F. Supp. 3d 210, 215 (D. Mass. 2021) (citing *Oxford Global Resources, LLC v. Hernandez*, 480 Mass. 462, 466, 106 N.E.3d 556 (2018) (quoting *McInnes v. LPL Fin., LLC*, 466 Mass. 256, 266, 994 N.E.2d 790 (Mass. 2013)).

Here, Plaintiff provides no facts alleging the Member Agreement is unconscionable, offends public policy, or is unfair in the particular circumstances. *See Shepardson,* 525 F. Supp. 3d at 215. Furthermore, the very section of the Member Agreement to which Plaintiff cites explains that Nextdoor does "not proactively moderate Content" and, while providing that Nextdoor "can" remove content, does not obligate it to do so. Doc. No. 1 at ¶ 10; Doc. No. 5-1 at ¶ 7). The Member Agreement is written in plain unambiguous language. Therefore, even taking Plaintiff's allegation that the Member Agreement is a contract of adhesion as true for the purposes of this Motion only, Plaintiff still fails to make a claim under M.G.L. Chapter 93A and this claim should, accordingly, be dismissed.

### ii. Plaintiff Fails to State a Claim for Negligence.

Plaintiff alleges that Nextdoor "led the Plaintiff to believe that it had a duty to remove disparaging commentary when reported[,]" that "[t]his duty was breached when the commentary remained in publication[,]" and that "Plaintiff [consequently] suffered loss of income." Doc. No.

1 at 3.  In Massachusetts, a "plaintiff must prove four elements in order to prevail on a negligence claim: (1) duty; (2) breach of duty; (3) a causal connection between the breach of duty and damages; and (4) damages."  *Adams v. Cong. Auto Ins. Agency, Inc.*, 90 Mass. App. Ct. 761, 765, 65 N.E.3d 1229 (2016) (citing *Jupin v. Kask*, 447 Mass. 141, 146, 849 N.E.2d 829 (2006)).  "The existence of a legal duty is a question of law determined 'by reference to existing social values and customs and appropriate social policy.'"  *Adams*, 90 Mass. App. Ct. at 765 (citing *Jupin*, 447 Mass. at 143).  Plaintiff fails to demonstrate a single one of these elements, let alone all four.

Plaintiff firstly fails to state facts sufficient to support a finding that Nextdoor had any duty recognized by law.  Indeed the language of the Member Agreement makes abundantly clear that Nextdoor had no such duty.  Again, pursuant to the very sections of the Member Agreement to which Plaintiff cites in his Complaint, it is clear that Nextdoor owed no duty to Plaintiff to remove the content of other users, only that Nextdoor *can* remove content if it deems appropriate to do so.  Doc. No. 1 at ¶ 10; Doc. No. 5-1 at ¶ 7.  A plain reading of this clause shows that Nextdoor "can" take these actions, not that it is required to do so.  At no time did Nextdoor take on any duty of care toward Plaintiff, and Plaintiff does not state sufficient facts to conclude otherwise.

Secondly, with no duty of care established, Plaintiff also fails to establish a breach of such a duty.  Without specifically identifying a duty of care, Plaintiff cannot establish how that duty was breached and fails to do so in his Complaint.

Plaintiff's contention that the comments made by the unnamed "neighbor" caused him reputational and financial injury fails to establish either the third and or the fourth elements of negligence.  Even if, as Plaintiff alleges, "four prospective jobs were cancelled" and he obtained "no new business from the Nextdoor neighborhood in Massachusetts where he lived" "after the false-and-defamatory comments regarding his work" were made, Doc. No. 1 at ¶ 17, it is

undisputed that it was those comments by another Nextdoor user—not any action taken by Nextdoor—that was the direct and proximate cause of Plaintiff's alleged reputational and/or financial injury.

Moreover, "Massachusetts generally follows the traditional rule 'that purely economic losses are unrecoverable in tort ... actions in the absence of personal injury or property damage.'" *R.L. Whipple Co. v. Pondview Excavation Corp.*, 71 Mass. App. Ct. 871, 873, 887 N.E.2d 1095 (2008) (quoting *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395, 613 N.E.2d 902 (1993)). Because Plaintiff seeks to recover purely economic damages, his claim is barred by the economic loss doctrine. Plaintiff has suffered no personal injury and Plaintiff's alleged losses, therefore, do not and cannot arise from any personal injuries. *Id*. Likewise, Plaintiff has suffered no property damage. *Id*.

Therefore, Plaintiff fails to state a claim for negligence and this claim should, accordingly, be dismissed.

## IV.   CONCLUSION

WHEREFORE, Defendant Nextdoor, Inc. respectfully requests that this Court enter an order dismissing Plaintiff's Complaint with prejudice and granting such other and further relief that the Court deems just and proper.

|  |  |
|---|---|
| March 31, 2023 | Respectfully submitted,<br><br>NEXTDOOR, INC.<br><br>By its Attorney,<br><br>*/s/ Daron L. Janis*<br>Daron L. Janis (BBO No. 703028)<br>djanis@lockelord.com<br>LOCKE LORD LLP<br>111 Huntington Avenue<br>Boston, MA 02199<br>(617) 239-0100 |

**CERTIFICATE OF SERVICE**

  I certify that on March 31, 2023, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to any indicated as non-registered participants.

                */s/ Daron L. Janis*
                Daron L. Janis